**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| JOHNNY WRIGHT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:11-CV-357-PRC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Johnny Wright on September 23, 2011, and on Plaintiff's Opening Brief [DE 19], filed on March 14, 2012. Plaintiff requests that the Administrative Law Judge's decision to deny him disability benefits and supplemental security income be reversed or, alternatively, remanded for further proceedings. On June 13, 2012, the Commissioner filed a response, and on July 5, 2012, Plaintiff filed a reply. For the reasons set forth below, the Court denies Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On August 15, 2008, Plaintiff filed an application for a period of disability, seeking disability insurance benefits and supplemental security income and alleging an onset date of March 25, 2003. Plaintiff's application was denied initially on October 17, 2008, and subsequently upon reconsideration on December 30, 2008. Plaintiff filed a timely request for a hearing on February 9, 2009.

A hearing was held before Administrative Law Judge ("ALJ") Jose Anglada on February 26, 2010, by video teleconference. In appearance were Plaintiff, his attorney Brian Marlowe, and

1

vocational expert ("VE") Lee Knutson. On April 12, 2010, the ALJ issued a decision denying Plaintiff's application. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since March 25, 2003, the alleged onset date (20 CFR 404.1571 et seq. and 416.971 et seq.).

3. The claimant has the following severe impairment: degenerative changes of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR and 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift/carry a maximum of 20 pounds; he can push/pull a maximum of 20 pounds; he can stand/walk for about four hours in an eight hour workday and sit for about six hours in an eight hour workday. He needs the option to alternate between the sitting and standing position. He can occasionally stoop, crouch, twist and turn, but he cannot climb ladders or frequently climb stairs. He can only frequently operate foot controls. He should not be exposed to dangerous machinery or heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on [ ], 1961 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Supbart P,

Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 25, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 11-18.

Plaintiff sought review of the ALJ's decision; however, on July 22, 2011, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A. Medical Evidence and Testimony

Plaintiff received treatment over several years for back pain related to a work injury.

On April 18, 2002, an examination of Plaintiff revealed normal sensation, full range of motion, and negative straight leg raising. Plaintiff complained that he had hurt his back one month earlier, that the pain had gotten better, but that the pain was back.

On January 21, 2004, Plaintiff complained of tenderness across the lower back. The doctor noted straight leg raising associated with pain in the left leg.

Plaintiff visited the hospital on February 1, 2006, for abdominal pain. The examining nurses

noted normal range of motion in his extremities.

On December 14, 2006, Plaintiff presented for a consultative examination by Dr. Adela Perez, complaining of back pain radiating to the left leg. At this exam Plaintiff was walking using a cane and was limping in the left leg. Plaintiff described severe pain radiating to the left leg. Dr. Perez's examination revealed almost entirely normal sensation except for slightly decreased sensation in the left lower extremity, positive straight leg raising bilaterally on the left at 20 degrees and on the right at 50 degrees, and a decreased range of motion in the lumbar spine. Dr. Perez noted that Plaintiff had slight difficulty getting on and off the examination table, slight difficulty tandem walking, much difficulty standing on toes, "too much" difficulty standing on heels, "too much" difficulty squatting, and moderate difficulty standing on one leg. AR 305. Dr. Perez found range of motion in all joints was normal in all extremities, no spinal anatomic abnormalities or tenderness, full muscle strength, and normal reflexes. Dr. Perez diagnosed "[c]onstant chronic back pain, only relieved when lying down, in the lower back and radiating to the left leg with paraesthesia of the left leg" and the need for a cane to walk. AR 305.

At a pain management assessment on June 14, 2007, Dr. Behrad Atassi diagnosed lower back pain with intermittent radiculopathy and recommended epidural steroid and trigger point injections. Dr. Atassi's exam revealed no sensory loss or motor weakness, a positive straight leg raise test on the left at 45 degrees, and weak bilateral deep tendon reflexes.

A July 25, 2008 MRI of the lumbar spine revealed degenerative changes, worse at L4-L5 and L5-S1; mild lateral recess narrowing at L4-L5; and "mild neural foraminal narrowing greater on the left at L5 which may abut the L5 nerve laterally." AR 299.

Plaintiff reported in a September 4, 2008 function report that he wakes up due to back and

4

leg pain, has difficulties dressing but can take care of most of his own personal care, may go to the store, can only walk 25 feet depending on how bad the pain is, and sometimes uses a cane. Plaintiff reported problems with the ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs due to his stress and pain.

On September 11, 2008, Dr. Chieda Nchekwube, MD, a primary care physician, noted complaints of right leg cramps at times and diagnosed lumbar disc disease with radiculopathy finding spinal tenderness and a positive straight leg raise test. Dr. Nchekwube referred Plaintiff to a spinal surgeon, Dr. Shepherd; however, Dr. Shepherd did not accept Plaintiff's medicaid insurance.

At a psychological consultative examination, Dr. Patrick McKian, Ph.D. noted that Plaintiff complained of pain across his low back and buttocks going down his right leg.

On October 14, 2008, at a second consultative examination by Dr. Adela Perez, Plaintiff complained of back pain radiating to the right leg. Dr. Perez noted that Plaintiff walked into the room limping on the right leg, and Dr. Perez noted "some numbness in the right and left leg, very minimal." AR 371. Plaintiff described symptoms of numbness in the right and left leg, though minimally in the left. Plaintiff reported that the pain formerly radiated in the left leg, but not any more. Dr. Perez's examination showed a decreased range of motion in the lumbar spine and a positive bilateral straight leg test at 60 degrees. Dr. Perez noted normal range of motion in all joints, no tenderness or atrophy, no spinal anatomic abnormalities, full muscle strength in the upper and lower extremities, intact sensation, and symmetrical reflexes. Plaintiff reported that at times he uses a cane; that day he was not using one. Dr. Perez diagnosed back pain, possible lumbar radiculopathy, and possible herniated disc.

5

State agency reviewing doctor Michael Brill, M.D., completed a physical capacity assessment on October 17, 2008. Dr. Brill opined that Plaintiff could perform a limited range of medium work and determined that Plaintiff's impairments did not meet or equal a medical listing. Another state agency reviewing doctor, Bruce Whitley, M.D., affirmed Dr. Brill's opinion on December 30, 2008.

A March 25, 2009 nerve conduction study revealed consideration of a mild bilateral L5 radiculopathy in Plaintiff's lower extremities.

On April 28, 2009, Plaintiff presented to Dr. C.J. Yoon upon referral from Dr. Nchewkube for an initial pain evaluation. Plaintiff described pain in his mid back that radiates down both legs as well as tingling in both legs and muscle spasms in his back. Dr. Yoon noted that Plaintiff's back range of motion was moderately decreased in all directions and his back strength was decreased, but that his back sensation was normal and reflexes were symmetrical. Repeated examinations by Dr. Yoon over the next eight months showed nearly identical results. *See* AR 412-13, 419-20, 423-24, 427-28, 431-32, 434, 445, 448. Dr. Yoon diagnosed degenerative disc disease and lumbar radiculitis. Dr. Yoon wrote "off work until notice" and gave Plaintiff a home exercise program and a prescription for a back brace as well as pain medications. Dr. Yoon ordered an MRI of the lumbar spine.

The July 7, 2009 MRI revealed mild disc degenerative change at L5-S1 with facet arthritis especially at L4-5 on the right side. There was no evidence of disc herniation or significant spinal stenosis in the lumbar spine.

On July 24, 2009, Dr. Yoon ordered physical therapy to occur three times a week for twelve weeks. On August 21, 2009, Dr. Yoon prescribed a cane for low back pain and lower extremity

weakness at Plaintiff's request. On September 18, 2009, Plaintiff indicated to Dr. Yoon that he did not feel that physical therapy was helping, that his pain was worse, and that he had bilateral leg weakness. Dr. Yoon indicated that Plaintiff should continue physical therapy. Physical therapy records from each of the visits in August and September of 2009 noted Plaintiff was "improving slowly." AR 415-18. On October 16, 2009, Plaintiff noted to Dr. Yoon that the physical therapy is going "OK"; however, he still described tingling and burning pain radiating to his leg and foot on both sides. After his physical therapy ended, Plaintiff reported no improvement to Dr. Yoon.

On January 14, 2010, Plaintiff presented to Dr. Nchewkube for complaints of low back pain, and the doctor noted spinal tenderness and a negative straight leg raise test.

In testimony at the hearing on February 26, 2010, Plaintiff described pain shooting through his right leg and groin area down to his feet.

## B. The ALJ's Decision

The ALJ found that Plaintiff's degenerative changes of the lumbar spine constituted a severe impairment under the regulations. He determined that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. He then found that Plaintiff was capable of performing a restricted range of sedentary work. He concluded that Plaintiff could perform a significant number of jobs in the national economy and, therefore, was not disabled.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v.*

*Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Do(es) the impairment(s) meet or

9

equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff argues that the ALJ committed reversible error by inadequately analyzing the evidence at step three and concluding that Plaintiff's impairments do not meet or equal Listing 1.04A in 20 CFR Part 404, Subpart P, Appendix 1 without any explanation. The Commissioner responds that substantial evidence in the record supports the ALJ's decision.

The determination of whether a claimant suffers from a listed impairment occurs at steps two and three of the ALJ's analysis. Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Once the ALJ has evaluated whether the claimant has a severe impairment or combination of impairments, the ALJ proceeds to step three. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

"To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment," and he "bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citing *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991); *Steward v. Bowen*, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988)); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). An impairment that manifests only some of the criteria will not qualify, regardless of its severity. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The decision "[w]hether a claimant's condition equals a listed impairment is strictly a medical determination." *Hickman*, 187 F.3d at 688 (citing 20 C.F.R. §§ 404.1526(b), 416.926(b)).

In the present case, the ALJ considered whether Plaintiff met Listing 1.04, which provides, in relevant part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A.[1]

In his decision, the ALJ's step three finding, found in the heading of Finding #4s, provides: "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR 14. The text of the section under that heading provides, in full:

> Despite [Plaintiff's] diagnosed impairment, the medical evidence does not document listing level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination. In making this finding, I gave particular consideration to listing 1.04 (Disorders of the spine).

*Id.*

Plaintiff argues that, although the ALJ notes evidence regarding Plaintiff's impairments throughout the decision, the ALJ provides no analysis as to why the evidence does not support a listing level impairment. As noted above, an "ALJ must 'sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.'" *Hickman*, 187 F.3d at 689 (quoting *Rohan v. Chater*, 98 F.3d 966, 971

---

[1] Because Plaintiff asserts in his brief that Listing 1.04A is the applicable listing, the Court cites only that portion of Listing 1.04.

(7th Cir. 1996)). Plaintiff is correct that the ALJ offers no detailed explanation for his determination that Plaintiff does not meet the specific requirements of Listing 1.04, and the ALJ does not identify the Listing 1.04 requirements nor does he note what findings were present or what findings were missing in the context of the listing requirements.

Although an element-by-element analysis of Listing 1.04A and why Plaintiff's medical evidence does not satisfy each element would have been preferable, the Court finds that, in this case, the failure to specifically discuss the elements of Listing 1.04 in combination with the medical evidence is harmless because the ALJ finds at step three that no acceptable medical evidence demonstrates a listing equivalence, and later in his decision, the ALJ discusses the medical evidence relevant to the Listing 1.04 requirements that supports his step three holding. Notably, Plaintiff agrees that an ALJ is not required to address every piece of evidence nor is an ALJ required to place his discussion of the evidence in the section of the decision regarding the listings or to repeat his factual analysis. Moreover, Plaintiff has not demonstrated, as is his burden, that he meets or equals the requirements of Listing 1.04. In other words, the Court finds that remand for correction of the ALJ's failure to properly explain his step three finding would not result in a different outcome. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[The court] will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

Discussing the medical evidence in the context of the residual functional capacity assessment

and his credibility analysis, the ALJ noted several examinations that showed listing criteria had not been met. In his decision, the ALJ noted that the July 2008 MRI showed degenerative changes and mild narrowing and mild neural formainal narrowing and that "this may affect his L5 nerve laterally." AR 15. The ALJ noted both the December 14, 2006 consultative examination as well as the October 14, 2008 consultative examination, both by Dr. Perez. The ALJ noted that, at the October 14, 2008 consultative examination, Plaintiff's straight leg raising was positive at 60 degrees. However, the ALJ also noted that Plaintiff's most recent straight leg raising results assessed by Dr. Nchekwube in January 2010 were negative. The ALJ then noted that, at the October 14, 2008 examination, Dr. Perez observed that Plaintiff was able to get on and off the examination table without assistance, and that Plaintiff was able to stand on one leg. The ALJ further noted that Plaintiff's overall range of motion was normal, with decreased range of motion in the lumbar area. The ALJ noted that Plaintiff had no muscle atrophy and that his grip strength was within normal limits. The ALJ also noted that Dr. Perez indicated that Plaintiff's tandem walk was slow, that he had moderate difficulty squatting and mild difficulty standing on his heels and toes.

Although the ALJ did not specifically discuss all of the evidence of record, he discussed enough of the evidence in his decision to support his step three finding. This is not a case in which the Commissioner's attorney has constructed the ALJ's reasoning for him or has mentioned grounds for the decision not articulated by the ALJ. Thus, the Commissioner's arguments that the ALJ's decision is supported by substantial evidence does not violate the *Chenery* principle, as suggested by Plaintiff. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *see also Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011) (quoting *Spiva v. Astrue*,

14

628 F.3d 346, 348 (7th Cir. 2010) ("[I]n defiance of the principle of [*Chenery*], the Justice Department's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error.")).

Plaintiff's attempt to show that the ALJ's error is not harmless by presenting evidence "consistent" with Listing 1.04(A) fails. Pl. Br., p. 9. Listing 1.04 begins with an opening set of criteria. The first requirement is that the claimant have a disorder of the spine, one of which is degenerative disc disease. The ALJ found that Plaintiff has a severe impairment of degenerative changes of the lumbar spine. The opening paragraph also requires that the disorder of the spine result in compromise of a nerve root or the spinal cord. In support of this requirement, Plaintiff points to the July 2008 MRI and the March 25, 2009 nerve conduction study and suggests that they "show compromise of a nerve root as described in the introduction to listing 1.04." Pl. Br., p. 9. However, these tests do not mention nerve root compression or compromise. In fact, the impression of the July 2008 MRI was "degenerative changes in the lumbar spine, worse at L4-L5 and L5-S1. Mild lateral recess narrowing at L4-L5. Mild neural foraminal narrowing greater on the left at L5 which may abut the L5 nerve laterally." AR 299. Similarly, the result of the March 25, 2009 nerve conduction study for the "lower extremity" provided only: "Based on the nerve conduction study data, consider a mild bilateral L5 radiculopathy." AR 398. Plaintiff offers no evidence definitively showing compromise of a nerve root or nerve root compression.

In addition to the requirements of the opening paragraph of Listing 1.04, Plaintiff then must also show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine,

15

> motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(a). For neuro-anatomic distribution of pain, Plaintiff notes that he had an MRI of the lumbar spine, a nerve conduction study, and symptoms "consistent with" nerve root compression characterized by neuro-anatomic distribution of pain, citing AR 41-42, 299, 303, 351, 371, 398, 437. Pages 41 and 42 are Plaintiff's own testimony that he has pain shooting through his nerve, down through his legs and his hip, page 351 is the first page of Plaintiff's report of mental status examination by Dr. McKian and contains only Plaintiff's statements to Dr. McKian regarding his impairments, and Page 437 is the first page of Dr. Yoon's April 28, 2009 report from the initial pain consultation and reports Plaintiff's subjective complaints of pain radiating to both sides. Non-medical evidence may not be considered at step three. *See Hickman*, 187 F.3d at 688. Pages 299 and 398 are the results of the MRI and the nerve conduction study discussed above. On page 303, Dr. Perez notes under her review of neurological systems: "Numbness in the left leg. No problems moving his leg." AR 303. Page 371 is from Dr. Perez's October 2008 report titled "Disability History and Physical Examination," and contains the following neurological review: "Some numbness in the right and left leg, very minimal. It used to be worse, but it has improved." AR 371.

For limitation of motion of the spine, Plaintiff cites evidence that he has decreased range of motion of his spine, citing AR 302, 369, 438. Page 302 is a December 19, 2006 Range of Motion Chart completed by Dr. Perez. Page 369 is an October 14, 2008 Range of Motion Chart completed by Dr. Perez. Page 438 is Dr. Yoon's initial examination, in which he found "[range of motion] is moderately decreased in all direction[s]." AR 438.

For motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, Plaintiff notes that Dr. Yoon noted muscle weakness and prescribed a cane for it. However, he recognizes that Dr. Atassi noted no motor weakness but weak deep tendon reflexes, citing AR 419, 438, 451, 319. Pages 419 and 438, which are from Dr. Yoon's September and May 2009 reports respectively, each provide that his "[s]trength of back is decreased." AR 419, 438. Page 451 is a prescription by Dr. Yoon for a cane with a diagnosis of "lower extremity weakness." Finally, page 319 is a letter from Dr. Behzad Aalaei to Dr. Nchekwube, dated June 14, 2007, which notes that Plaintiff complains of paresthesia of left lower extremity and of muscle spasm in legs and lower back; however, Dr. Aalaei's physical examination of Plaintiff's neurological system found: "No sensory loss. No motor weakness. Straight leg raise is positive left at 45 degrees. Babinski negative bilaterally. Deep tendon reflexes are weak bilaterally." AR 319.

For the requirement that there be positive straight leg tests when there is involvement of the lower back, as in this case, Plaintiff notes that numerous doctors noted positive straight leg tests, but also acknowledge that some have been negative, citing AR 304 (12/14/06 - positive), 319 (6/14/07 - positive), 334 (9/11/08 - positive), 373 (10/14/08 - positive), 455 (1/14/10 -negative).

Although Plaintiff has established some of the elements of Listing 1.04A, Plaintiff has not established all of them through acceptable medical evidence. Moreover, while Plaintiff correctly cites the findings of doctors regarding some elements, Plaintiff fails to note that those same doctors found the absence of other required criteria. For example, during both consultative examinations in which Dr. Perez noted decreased range of motion of the spine and positive straight leg raising, Dr. Perez also found no spinal anatomic abnormalities, full muscle strength, symmetrical or normal reflexes, no atrophy, and almost entirely normal or intact sensation.

17

Finally, as noted above, the two reviewing state agency doctors in Fall/Winter 2008 found on the Disability Determination and Transmittal forms that Plaintiff did not meet or equal the listings. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("[The Disability Determination and Transmittal forms" conclusively establish 'that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'") (quoting *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)). In his step three finding, the ALJ recognizes that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." AR 14. In his RFC assessment, the ALJ specifically discusses in detail the October 17, 2008 Physical Residual Functional Capacity Assessment, in which Dr. Brill opined that Plaintiff could perform a limited range of medium work (the ALJ assigned "some" weight to this opinion), and noted the December 30, 2008 affirmation of the assessment by Dr. Whitley. Dr. Brill's opinion was incorporated in the October 17, 2008 Disability Determination and Transmittal Form indicating that Plaintiff was not disabled. Plaintiff does not contest or controvert these opinions. A review of the record demonstrates that no treating or examining doctors included findings that Plaintiff met or equaled all of the Listing 1.04A criteria, and Plaintiff does not identify any such records.

Because the Court is convinced that the ALJ would reach the same step three result, the Court denies Plaintiff's request for remand.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief requested in Plaintiff's Opening Brief [DE 19].

SO ORDERED this 4th day of September, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record